No. 85.—JOHN ROBSON, *administrator de bonis non* of ISAAC WALTON, deceased, plaintiff in error, *vs.* L. T. P. HARWELL and WIFE, defendants.

[1.] In a bill in Equity every material fact to which the plaintiff means to offer evidence, must be distinctly stated, or otherwise he will not be permitted to offer or require evidence of that fact. No facts are properly in issue unless charged in the bill, nor can relief be granted for matters not charged, although they may be apparent from other parts of the pleadings and evidence, for the Court pronounces its decree *secundum allegata et probata.*

[2.] In a bill filed by the *cestui que trust* to execute a parol trust of lands, no

evidence by parol is admissible, nor can a decree be rendered in favor of the plaintiff, unless the charge of fraud is distinctly made. It cannot be considered as inferentially made by a statement of the parol agreement which declares the trust, and of a failure to execute it.

[3.] Where R conveys to W a tract of land, in consideration that W will put upon it twenty negroes, and will, at his death, convey those negroes and their increase to M, and W enters into possession of the land: *Held*, that this is a trust of personalty, created by W and declared in favor of M, which a Court of Chancery will execute against the representatives of W in favor of M.

By LUMPKIN, J.

[1.] The case of *Miller and others vs. Cotton and others*, (5 *Ga. Rep.* 341,) reviewed and affirmed.

[2.] Under the Statute of 29 *Car. II.* all declarations of trusts in lands must be *manifested* or proved by writing, signed by the party to be charged therewith.

[3.] If a recovery is sought on the ground of *fraud*, it must be alleged, or circumstances amounting to a charge of *fraud*.

[4.] Where lands have been obtained by fraud in the grantee, upon a parol assurance that he would convey them in a particular manner to third persons not parties to the contract, *the grantor or his heirs at law* are the proper parties to seek redress for the fraud in a Court of Equity.

[5.] Where a recovery is sought on the ground of the fraud of the grantee in obtaining a conveyance of lands, the recovery can extend only to the property so fraudulently obtained, and mesne profits for the use of the same.

[6.] A contract made for the sale of both *real* and personal property, which is *entire* and founded upon one and the same consideration, if void *in part* is void in *toto*.

By WARNER, J.

[1.] Whenever there has been a *partial performance* of a parol agreement for the conveyance of land, within the Statute of frauds, a *part execution* of the *substance* of the agreement, acts done and performed, unequivocally referring to and resulting from the agreement, and such that the party in whose favor the agreement was made, would suffer an *injury* amounting to *fraud*, by the *refusal* of the other party to execute it, a Court of Equity will in such cases decree a specific performance of the agreement.

[2.] To authorize the admission of parol evidence to establish an agreement for the conveyance of land, within the Statute of Frauds, a sufficient foundation must be laid therefor in the complainant's bill, by making such averments as, in the view of a Court of Equity, will constitute *fraud*, or such as from which a Court of Equity will presume *fraud*.

[3.] A parol agreement to convey lands set up by a Court of Equity, has equal validity with a deed containing a covenant to convey, for it is a principle in Equity, that what is agreed to be done for a valuable consideration, is considered as actually done.

[4.] Where a bill is filed for specific performance of an agreement, and the defendant has put it out of his power to perform, by a sale of the property, the Court will decree compensation by way of damages.

In Equity, in Morgan Superior Court.   Tried before Judge MERRIWETHER, March Term, 1849.

Littleton T. P. Harwell and his wife, Martha Harwell, formerly Martha Robinson, filed their bill in Morgan Superior Court against Peter Walton, administrator of Isaac R. Walton, deceased, charging—

That Martha S. Harwell was born in 1804, and at the age of four days was adopted by Isaac R. Walton, deceased, as his child; that about the year 1818, the said Isaac R. being desirous to settle a plantation, was so well pleased with a lot of land belonging to complainant's father, Littleberry Robinson, known as the Black Gum Hill lot, that after repeated applications to buy the said lot, which the said Robinson repeatedly refused to sell or convey to said Walton, that said Littleberry Robinson finally, about the first of December, 1818, at the earnest solicitation of said Isaac R. and in consideration of an agreement and promise, then entered into by the said Isaac R. to the said Littleberry, that he would put twenty negroes, slaves, upon said lot of land, and add thereto such other land as might become necessary for the said slaves and their increase to cultivate, during the lifetime of the said Isaac R. and at his, said Isaac R.'s, death, to deliver and convey, or cause to be delivered and conveyed to your oratrix, the adopted child of the said Isaac R. as aforesaid, the said Black Gum Hill lot, with such other land as might be added thereto for the purposes aforesaid, together with the said twenty slaves and their increase, and such stock, plantation tools and furniture, utensils, &c. as might be upon said place, at the death of said Isaac R. he, the said Littleberry Robinson, did convey to the said Isaac R. the said Black Gum Hill lot of land, worth $4000, together with a stock of cattle, sheep, &c. worth $500, upon said lot of land, the said Isaac R. paying nothing for the

said land and stock, as they are informed and believe; nor was he, by the agreement with said Littleberry Robinson, bound to pay for the conveyance of said land, and delivery of said stock, any other consideration than that set forth in said agreement; that in pursuance of said agreement, the said Isaac R. in good faith, did put twenty negroes, slaves, upon said plantation, and went into the possession of the same, and did purchase other lands adjoining said lot, and often, during his lifetime, told the complainants and others, that the said plantation and all that was thereon would belong to them at his death. The bill farther charged, that the said Isaac R. died without conveying or causing to be conveyed the said property as agreed upon. The bill specified the property that was upon the plantation at the death of Walton, and charged that the same was sold by the administrator. The prayer of the bill was, that the administrator might be decreed to deliver to said complainants, said plantation, negroes, stock, &c. such as it was at the death of the said Isaac R; and if the administrator shall answer that he has sold the said property, so that the same cannot be conveyed and delivered, that he be decreed to pay out of said estate the full value thereof; or that he be decreed to pay the sum of $4000, with interest thereon from the time Walton received the land, and for general relief.

The answer of Peter Walton, the administrator, denied the agreement set up in the bill, and insisted upon the Statute of Frauds.

Peter Walton died pending the bill, and John Robson was appointed administrator, *de bonis non*, of Isaac R. Walton, and made regularly a party to the proceedings.

On the trial on the appeal, after the bill was read to the Jury, counsel for defendant moved to dismiss the bill, on the ground that the facts stated therein did not make such a case as would authorize the equitable interference of the Court. Which motion the Court overruled as being inadmissible at that time, in the orderly conduct of a suit in Chancery. To which decision counsel for defendant excepted.

Complainants offered in evidence the testimony of Robert Taylor, taken by commission, to prove the admissions of Isaac R. Walton, to which counsel for defendants objected—

1st. Because parol evidence is inadmissible to prove the ex-

press trust in the land alleged in the bill, in order to enforce its specific performance.

2d. If the facts stated in the bill amounted to and made out a case of fraud, the *heirs at law* of Littleberry Robinson, and not the complainants, were entitled to recover under the same.

3d. Because a remainder in property cannot be created by parol.

4th. That a specific performance of personalty cannot be decreed under the allegations in this bill.

The Court overruled the objection and admitted the evidence, and defendant excepted.

Much evidence was introduced on the trial unnecessary to be embodied here.

Upon the close of the evidence for the complainants, the defendant's counsel moved to dismiss the bill, on the ground that the case stated in the bill, and attempted to be sustained by the evidence, was not such a case as would entitle the complainants to a decree.

The Court overruled the motion and defendant excepted.

The defendant then offered in evidence the will of Littleberry Robinson, to show that Mrs. Harwell received under it an equal share of his estate. The evidence was rejected by the Court, and defendant excepted.

The Court charged the Jury, that if from the testimony the contract stated in the bill had been proved, according to the rules of law which it would give them in charge, they were bound to find for complainants the value of the property, with interest from the sale. To which charge defendant excepted.

Counsel for defendant requested the Court to charge the Jury—

1st. That there having been no written evidence of the creation or manifestation of the trust as to the land, the same cannot be executed by a decree of specific performance.

2d. That the remainder in this case being created by parol, is void.

3d. That a specific performance of personalty cannot be decreed on the facts charged in this bill.

4th. That the evidence in this case is contradictory, and if the Jury should find the testimony setting up this pretended trust to be contradicted by other evidence, and contradictory in itself, they cannot decree in favor of complainant.

5th. That the Jury cannot decree in favor of the complainants, unless they are satisfied that at the time of the agreement about the land, Isaac R. Walton induced Littleberry Robinson to convey the land to him with a fraudulent intent *at the time* not to comply with his contract.

6th. That by the contract set up in the bill, an estate for life was created in Isaac R. Walton, and a remainder in the land and negroes in Mrs. Harwell, which being in parol, is void.

7th. That if the Jury believe that the conveyance of the land from Littleberry Robinson to Isaac R. Walton, was fraudulently procured by Walton, that the *heirs at law* of Robinson, and not the complainants, would be entitled to recover; and in that event they could recover only the land so fraudulently conveyed, and not the negroes and other property.

All of which the Court refused to charge, as it had already adjudicated all the grounds except the 4th and 5th. On the 4th ground, the Court declined giving an opinion to the Jury by way of direction, that the evidence was or was not contradictory, but charged, that if the evidence was contradictory in itself, the Jury could not find for the complainants. On the 5th ground, the Court charged, that the fraudulent intent need not to be proved to have existed *eo instanti*, with the making of the contract with Robinson, but if he failed to do what he promised, the law will evidence his intent by his act, and connecting his failure to convey with the original agreement, will presume the existence of that fraudulent intent on the part of Walton at the time of the conveyance by Robinson.

To all of which charge, and refusal to charge, defendant excepted; and upon these several exceptions error has been assigned.

J. HILLYER and T. R. R. COBB, for plaintiff in error.

A. REESE and F. H. CONE, for defendants.

The following points and authorities were relied on by Mr. CONE, in his argument for the defendants.

1st. The statements in the bill make a case of fraud on the part of plaintiff's intestate.

It is not necessary to charge the fraud in so many words. If

the facts and circumstances stated amount to fraud, that is sufficient. *Story's Eq. Pl.* 24, 25, 212. 3 *Cowen's Reps.* 576. 2 *Summers' Rep.* 612. 2 *Ala. Reps.* 605.

I shall first consider the case in relation to the real estate.

Parol evidence is admissible to show the fraudulent use of a deed, or that a party receiving a deed, absolute on its face, received it under a promise to dispose of the property conveyed by it, in a particular way, and has refused or neglected to perform such promise. 2 *Story's Eq.* §768, 1265, 395, 437. 7 *Simons' Reps.* 644. 6 *Paige's Reps.* 355. 1 *Dallas' Reps.* 424. 13 *Ala.* 475. 1 *Atkins' Rep.* 391. *Roberts on Frauds*, 102. 2 *Wash. C. C. Reps.* 397. 6 *Wheaton*, 481. 1 *Paige*, 147. 3 *Atkins*, 539. 11 *Vesey*, 626. 2 *Ala.* 571.

The Statute of Frauds was never devised to protect fraud, and when a person obtains a conveyance of property, upon a parol assurance or promise that he will dispose of it in a particular way, a Court of Equity will compel him to perform the promise. 9 *Vesey*, 516. *Pres. Ch.* 3. 1 *Vernon*, 296. 2 *Ib.* 506. 2 *Vesey & Beame*, 259. 6 *Vesey*, 252. *Ambler*, 69. 1 *Vesey*, 123. 3 *Atkins*, 359. 2 *Freeman*, 52. 5 *Viner's Abg.* 521. 8 *Bligh*, 111. 1 *Cox*, 414. 1 *John. Ch. Reps.* 582. *Ib.* 406. 3 *Cowen's Reps.* 539. 2 *Desaussure*, 14. 2 *Vesey*, 155. 10 *Vesey*, 243. 1 *Hovenden on Frauds*, 495. 2 *Merivale*, 120. 1 *Atkins*, 380. 1 *Story's Eq.* §330. 1 *Young & Collyer*, 583. 2 *Ala. Reps.* 571. 1 *Vesey*, 120, 284, 289. 1 *McCord's Ch.* 119.

All the arguments and authorities in relation to the real estate, apply with increased force to the personal estate, as that is not affected by the Statute of Frauds.

The case presented by the bill does not create an estate in remainder in the personal property in the defendant. Walton, for a valuable consideration, agreed to convey the property, at his death, to defendants. A Court of Equity will execute such a contract. 13 *Ala.* 475. 2 *Story's Eq.* §724. 1 *Wheaton*, 151. 1 *Peters*, 305. 22 *Pickering's Reps.* 231.

The Court not being unanimous, the Judges delivered their opinions *seriatim.*

NISBET, J. delivering the opinion of the Court.

Robson *vs.* Harwell and Wife.

I am unwilling to affirm the judgment of the Court below, so far as the real estate is concerned, and affirm it as to the personal property.   The Statute of Frauds requires trusts of real estate to be manifested in writing.   A deed was, in this case, executed from Robinson to Walton to the land in question.   There was no declaration of a trust in writing as to the realty.   So far as the land is concerned, as a general proposition, it is not questioned but that written evidence of a declaration of the trust is indispensable to take such a case out of the operation of the Statute.   The bill, however, sets up a parol declaration of a trust in behalf of Mrs. Harwell, as to both the personalty and the land; and, if I correctly understand it, it was filed to compel the administrator, without an allegation of fraud, to execute that trust.   Although trusts of land must be generally proven by written testimony, yet Equity will execute a parol trust of land, upon the ground of fraud, in favor of the party injured.   The decision of the Judge below was founded on this exception to the general rule.   It went upon the ground that Walton perpetrated a fraud upon the complainants, by failing, at or before his death, to convey or deliver the property to them, in pursuance of his verbal assurances to that effect—the *Judge* holding that such failure related back to the time when the agreement was entered into, and manifested a fraudulent intent at that time.   To be, however, a little more explicit as to the opinion of the Court below :   The *Judge* charged the Jury, " that it was not necessary to prove that the fraudulent intent of Walton existed *eo instanti* with the making of the agreement to convey to Mrs. Harwell.   If such an intent arose afterwards, and in pursuance of that intent to defraud Mrs. Harwell, Walton failed to do what he had contracted to do, and on account of which he obtained the conveyance of the Gum Hill tract of land from Robinson, the law will evidence his intent by his acts, and connecting his failure to convey, with his original agreement to convey, it will presume the existence of that fraudulent intent on the part of Walton, at the time of the conveyance by Robinson."   I refer to the opinion of the Court, for the purpose of establishing the ground upon which the judgment goes.   That ground is *fraud*.

[1.] To my mind no evidence of fraud could have been properly admitted under this bill, and no decree ought to have been rendered on the ground of fraud, because it makes no issue of

fraud—it contains no charge of fraud—and the defendant is not, therefore, notified to respond to any such allegation. The pleader who drafted this bill, could not have contemplated a recovery upon the ground of a fraud by Walton upon the rights of Mrs. Harwell; if he had, he would have said so. He would have brought it home to the conscience of the defendant, by direct, intelligible averments. He would have so framed his bill as not to have permitted the answer to evade the very point upon which his recovery is to rest. He would have so framed it, as that there could be no sort of doubt about his right to take testimony in relation to the fact of fraud. The bill before me was clearly filed for the purpose of relief against the failure of Walton to execute his trust agreement with Robinson; not because of his fraudulent intention, but because the contract or agreement, being an honest one in the beginning, was just such a contract as a Court of Equity would enforce. It sets up an agreement by which a trust is created, and by its averments and prayers demands an execution of it. It invokes the powers of a Court of Chancery to interpose in behalf of the *cestui que trust.* That I am right in this view of the bill, will appear from a brief analysis. It charges that Mrs. Harwell was born in 1804, and at the age of four days was adopted by Major Walton; that in the year 1818, he being desirous of settling a plantation, and being well pleased with a lot of land belonging to her father, Capt. Littleberry Robinson, called the Gum Hill lot, importuned him to sell it to him; that Robinson finally, in December, 1818, did convey to him that tract of land, valued at $4000, and the stock upon it, valued at $500, *in consideration of a promise and agreement there made and entered into by said Walton with him, that he, Walton, would put twenty negroes on the land, and add thereto such other land as might become necessary for said slaves and their increase to cultivate, during his. (Walton's) lifetime, and at his death, that he would deliver or convey, or cause to be conveyed to Mrs. Harwell, his adopted daughter, and who was the child of Robinson, the said Black Gum Hill lot, with such other lands as might be added thereto, together with the twenty slaves and their increase, and such stock, plantation tools, furniture and utensils as might be on the place at his death;* that the said Walton, the bill proceeds to charge, paid nothing for the land and stock on it; that in good faith Walton did put upon the plantation the twenty negroes, and purchased other lands adjoining and added

thereto; that he often, during his life, told the complainants and others, that that plantation and all that was on it, would belong to them at his death. The bill farther charges, that Walton died without conveying the property, as agreed to be done, to Mrs. Harwell; it specifies the property and its value that was on the place at his death, and charges that it had been sold by Walton's administrator. The prayer is, that the administrator be decreed to convey and deliver to the complainants the plantation, stock and negroes, such as they were at his death; and if the administrator shall answer that he has sold the property, so that the same cannot be conveyed and delivered, that he be required to pay out of the estate of Walton the full value thereof; or that he be decreed to pay the sum of four thousand dollars, with interest thereon from the time that Walton received the land; also, there is a prayer for general relief.

I have not the bill before me. The foregoing analysis is taken from the bill of exceptions, and is, I have no doubt, correct. Now, the sum and substance of it is, that the agreement made between these parties creates a trust, and not being consummated in Walton's life time, will be enforced upon his representatives. That is the specific demand made by the complainants. The agreement, as charged, was fully proven, by the deed to the land from Robinson to Walton, and by parol. The parol testimony was objected to and admitted, and exception taken thereto. As the case stood by the pleadings, the complainants clearly relied upon the the agreement as declaring a trust of these lands, and they went for the execution of the trust. Does the bill, as I have represented it, go upon the idea of fraud—does it make any charge of fraud, or is there any issue of fraud made by it? I think not. And none can be implied from the charges made, because it goes upon other and distinct grounds of equitable relief. I cannot consider it a case involving the principles upon which relief, in the execution of a parol trust, is granted upon the ground of fraud. The pleadings do not warrant the judgment, so far as the land is concerned.

The rule is, that every material fact to which the plaintiff means to offer evidence, must be distinctly stated in the bill; or otherwise, he will not be permitted to offer or require evidence of that fact. No facts are properly in issue, unless charged in the bill. Nor can relief be granted for matters not charged, although they

may be apparent from other parts of the pleadings and evidence, for the Court pronounces its decree *secundum allegata et probata.* The reason is, that the defendant may be apprised by the bill, what the suggestions and allegations are, against which he is to prepare his defence. *Story's Eq. Plead.* §§28, 257. 1 *Daniel's Ch. Prac.* 377. *Gordon vs. Gordon,* 3 *Swan,* 472. 6 *Price,* 240, 259. 18 *Vesey,* 302. 7 *Wheat.* 522. 11 *Peters,* 229. *James vs. McKernon,* 6 *Johns.* 564. *Irnham vs. Child,* 1 *Brow. Ch. R.* 94. *Sidney vs. Sidney,* 3 *Peere Williams,* 276. *Watkyns vs. Watkyns,* 2 *Atk.* 96. *Whaley vs. Norton,* 1 *Vern.* 483. *Clarke vs. Turston,* 11 *Vesey,* 240. *Houghton vs. Reynolds,* 2 *Harr. R.* 264. *Mitf.* 34. 3 *Atk.* 182. 2 *Vesey,* 225. 3 *Wend.* 653. 3 *Bligh,* 211. 3 *Woode's Lectures,* 371. *Miller et al. vs. Cotton et al.* 5 *Ga. Reps.* 346, 347. 9 *Ala.* 985.

Fraud is a material fact—it is, of itself, a distinct head of Equity. Upon the view taken of this cause by the Court below, it is *that,* without which the complainants have no right to recover. Now, as to the land, the ground upon which a parol trust will be enforced, is fraud. The evidence by parol is admitted to show it only in case of fraud. In the absence of any charge of fraud, by what rule—on what authority—is parol evidence admissible? Where there is no charge of fraud, and the trust cannot be proven by written evidence, *the plea of the Statute of Frauds, requiring trusts of land to be manifested in writing, must be conclusive.* The charge of fraud is necessary to let in the evidence, and if so, necessary to the decree.

To sustain the rule of pleading I am now insisting upon, I refer particularly to the case of *James vs. McKernon* (6 *Johns. R.* 559.) In that case, a bill was filed for an account, and the defendant set up an agreement under seal between the parties. It was held. that the complainant could not prove the agreement fraudulent, as there was no allegation of fraud in the bill. *Spencer,* J. said, " In my opinion the decree cannot be supported, if the evidence in the cause was ever so strong to prove fraud on the part of the appellant; and for this plain reason, that the Court cannot afford relief not sought for by the bill, and entertain the question of fraud, which is not so much as suggested by the complainant. *It is an invariable and universal rule of the Court of Chancery, to found its decrees upon some matter put in issue between the parties by the bill and answer;* and the rules and practice of that Court require,

*that in framing the bill, the matter of it be plainly and succinctly alleged, with all necessary circumstances of time, place, manner and other incidents."*

*Chancellor Kent,* in the same case, says, "The good sense of pleading, as well as the language of the books, require that every material allegation of this kind should be put in issue by the pleadings, so that the parties may be duly apprised of the essential enquiry, and may be enabled to collect testimony and frame interrogatories to meet the question. Without the observance of this rule, the use of pleading becomes lost, and parties may be taken at the hearing by surprise. As the pleadings stand, I am of opinion that the fact of fraud or no fraud in procuring the agreement, was not put in issue, and that the depositions, so far as they related to the point, ought not to have been read at the hearing. The general rule is, that no interrogatories can be put that do not arise from some fact charged in the issue."

I refer, also, to the case of *Lord Irnham vs. Child,* (1 *Brow. Ch. Rep.* 93,) as strongly sustaining the rule. That was a bill to redeem an annuity. The bill alleged, that upon settling the terms of the annuity, it was agreed that it should be redeemable, but both parties agreeing that if that fact appeared on the face of the transaction, it would make it usurious, it was agreed that the grant should contain no clause of redemption. It was drawn and executed accordingly without such clause. Upon the trial parol evidence was offered to prove this agreement, and was rejected, because the bill contained no allegation that the agreement to redeem was left out by fraud.

Lord *Thurlow,* after adverting to the fact that there could be no purchase of an annuity out of lands but by deed, said, "whether this question arises upon the Statute, or at Common Law, I do not see much difficulty. The rule is perfectly clear, that where there is a deed in writing, it will admit of no contract that is not part of the deed. Whether it adds to or deducts from the contract, it is impossible to introduce it on parol. It is contended, that it is the general authority of a Court of Equity to relieve in cases of fraud, trust, accident or mistake, and that this applies to agreements as well as to other subjects. This must always clash with arguments drawn from the Statute. It is admitted that the deed will bind if no fraud is committed, but objected, that when fraud intervenes, then the evidence may be introduced. The ob-

jection is founded on a great deal of wisdom and good sense; but the question is, if it were always to be admitted, whether it would not be subversive of justice. The Court has held that it would. *If the agreement had been varied by fraud, the evidence would be admissible.* The argument then must be to impute fraud to the party. The rule of evidence is not subverted if there is clear proof of fraud." This extract from the opinion of the Chancellor, exhibits the form in which the question was made, and the striking resemblance of the case to the one at this bar. The bill exhibited a deed without any provision for the redemption of the annuity, but set up a parol agreement that it should be redeemable, and was filed to compel the party to execute the agreement. The question was, whether the agreement could be proven by parol. The Chancellor concedes that it may, *if the agreement was varied by fraud; but he rejected the evidence because the bill contained no allegation of fraud.* Here, also, the bill admits a deed from Robinson to Walton, and sets up a parol agreement to convey the land to Mrs. Harwell at Walton's death, and asks the execution of it. The question is, whether parol evidence can be admitted to prove that agreement. Admitting that this is a case (for the sake of the argument) where the evidence is admissible if fraud were charged, I say, upon the authority of Lord *Thurlow,* that it cannot be admitted, *because the fraud is not charged.*

In the case in *Brown,* the fraud, as in this case, was claimed to be inferred from the facts stated. But the Chancellor held, that *it must be charged.* (For the rule as to charging fraud at law, see 6 *Johns. R.* 138.)

All the cases where parol testimony is admitted against a deed, to set up a parol trust as to land, so far as I am informed, go upon the idea of fraud in the beginning, and that must be distinctly charged.

[2.] I might rest my dissent to the judgment of the Court below, upon the want of sufficient allegations in the bill to admit the evidence. I am not, however, satisfied that if that objection did not exist, there ought to be a recovery, for the complainants, of the lands in question. Separating that part of this transaction which relates to the personal property from that which relates to the realty, and how does the matter stand? It is a bill filed by the *cestui que trust,* Mrs. Harwell, and her husband, to have exe-

cuted a trust declared by parol at the time the deed was executed. The land is the trust. That was absolutely and unconditionally conveyed by Robinson to Walton, in consideration that Walton would, at his death, convey it to Mrs. Harwell, together with the personal property. The agreement between the parties, that Walton shall so convey it, which exists in parol, is the declaration of the trust. The object, then, of the bill, so far as the land is concerned, is to engraft upon the deed a parol trust, and to cause it to be executed by a decree. The *cestui que trust* moves, in a Court of Chancery, to set up and cause to be executed, a parol trust of land upon the ground of fraud. Can *she* do it? I do not deny that a parol trust of lands may be enforced in Equity, upon the ground of fraud. Fraud, in such a case, is a sufficient reply to the Statute. The Statute, intended to prevent *frauds* as well as perjuries, cannot be made a cover for frauds. This is well settled in the books—no one controverts it. The question, however, is, whether such a trust, upon the ground of fraud, can be enforced at the instance of the *cestui que trust*, or whether the right to enforce it is not confined to the original parties to the trust agreement? If the latter be the true rule, then these complainants are not the proper parties. The bill should have been filed by the representatives of Robinson. I will not discuss this question—I will only say, that in the facts and reasoning of the case of *Miller and others vs. Cotten and others*, the judgment of this Court seems to me to have been already plainly declared against the right of these complainants, and that I have no fault to find with that judgment. 5 *Ga. Reps.* 341.

[3.] None of these difficulties are in the way of the judgment below, touching the personal property. As to *that*, the bill makes the following case: Major Walton, in consideration of the conveyance to him by Robinson, of the Gum Hill tract of land, with the use of it for life, agrees to put upon it twenty of his own negroes, which, with their increase, and all the stock, utensils, furniture, &c. on the plantation at his death, he agrees, at his death, to convey and deliver to Martha S. Harwell, (then Martha S. Robinson.) What is the legal effect of this agreement? To my mind clearly this: Major Walton, for a valuable consideration, to wit: the life estate in the land, (which was executed to him by the deed and his taking possession, both of which the bill shows,) created a trust in these negroes, their increase and the stock, &c.

and declared it in favor of Mrs. Harwell. The consideration is a valuable consideration. It moves from Robinson to him. Upon *that* the trust agreement is founded. Dying without having executed it, his representatives are bound to fulfil it. Chancery will constrain them to do it.

It was said in the argument, that the bill makes a case of a life estate in Walton, with remainder to Mrs. Harwell by parol, and inasmuch as a remainder in personalty cannot be created by parol, it is void. This cannot be construed into an attempt to create a remainder in these negroes, &c. There is no life estate created at all. Walton is the owner of the negroes. Upon them he declares a trust, which was never revoked, to take effect at his death; and having made a trust out of his own property, and declared it in favor of Mrs. Harwell, he held it during his life as her trustee, and at his death it was hers. Here is no contest with creditors or purchasers. The question is, whether Equity will not, in favor of the *cestui que trust*, compel the administrator of the trustee to respond. The Statute of Frauds does not extend to personal property, and does not, therefore, lie in the way; and as the execution of this trust does not depend upon *fraud*, no averment as to fraud was necessary in the bill. This Court has determined, that a trust of personalty may be created and proven by parol, and I shall not, therefore, labor that point. *Kirkpatrick vs. Davidson*, 2 *Kelly*, 297.

It is farther argued, that the contract in relation to the land and the personal property, is one entire contract, and if void by the Statute of Frauds in relation to the lands, it is also void in relation to the personalty.

It is true, that illegality of *consideration*, both by Statute and at Common Law, will destroy a contract, and the contract is void, although some part of the consideration be good. The illegal consideration taints the whole contract. In this case no part of the consideration is illegal. The consideration of Walton's agreement to convey the property to Mrs. Harwell, was the conveyance to him of the Gum Hill tract. That was a lawful consideration.

It is also true, that if there be an entire promise to pay several sums in one and the same contract, and the promise to pay one of them is void by Statute, the whole is void at law. In that case the plaintiff must declare for the whole sum, and must go upon

the express contract as a whole, and it being void in one part cannot be separated and made available for the other. This rule is illustrated in *Loomis vs. Newhall*, (15 *Pick*. 159.) The defendant there promised, by parol, to pay the debt of another, and in the same contract agreed to pay certain expenses which the plaintiff had incurred. The first part was void by the Statute of Frauds, and the second was valid as an original undertaking; yet inasmuch as the contract was an indivisible one, and void in part, it was held void *in toto*. This is not a case within that rule. It is not a promise to pay money, but an agreement to do certain things, the enforcement of which belongs alone to a Court of Equity.

It is laid down in some ancient cases, that if a contract be good in part, and void in part, by the Common Law, the part void will be repudiated, and the part good enforced, the Common Law being a nursing father; but a contract in part good, and in part void *by Statute*, is altogether void, the Statute being a tyrant. This distinction, however, between a Statute and the Common Law, seems to have been repudiated, and all such contracts are upon the same footing. *Story on Contracts*, §224.

The rule is, that whenever the contract is to perform legal and illegal acts, and they can be separated, it will be valid, in as far as it is legal, whether the other part be in violation of a Statute, or void at Common Law. A modification of this rule is this, to wit: when a Statute expressly enacts that all contracts containing any matter contrary thereto, shall be void, all contracts, however separable, which contain any thing repugnant to it are void. *Moys vs. Leak*, 8 *T. R.* 411. *Kerrison vs. Cole*, 8 *East*, 231. *Doe vs. Pilcher*, 6 *Taunt.* 359. 5 *Taunt.* 727. 4 *M. & S.* 56. 13 *East*, 87. 11 *East*, 165. 15 *East*, 440. 4 *Taunt.* 549. *Ib.* 105. *Ib.* 57. 1 *Smith's L. Cases*, 284. 7 *T. R.* 200. *Story on Contracts*, 144. *Chitty on Contracts*, 693.

Now, I remark, *first*, that this case does not fall within the modification of the rule above stated. The Statute of Frauds contains no express enactment declaring that all contracts in relation to parol trusts of land, containing matter repugnant to it, shall be void—nor does it contain any thing equivalent thereto. It does not even declare a contract for a parol trust in lands void—it only declares, that unless trusts in lands are *manifested and proven* in writing, they shall be void. *Prince*, 915. Hence

letters or other documents long posterior to the transaction in date, have been held equivalent to a formal and coeval declaration of a trust in lands. *Foster vs. Hale,* 5 *Vesey, Jr.* 308.   3 *Ib.* 696. 2 *Brow. C. R.* 161, 318.   2 *Bro. P. C.* 39.   *Roberts on Frauds,* 101.

In this particular the *seventh section* of the Statute is essentially different from the *fourth section,* which requires agreements, &c. to be in writing and signed, and if not, void. The 7th section declares a rule of evidence only, and recognises a parol declaration of trusts in land to be legal, if it can be set up by written evidence subsequently furnished.

I remark, *secondly,* that this contract is separable. The stipulations of Walton are, that he will convey the land, and also the personal property, to Mrs. Harwell. It is not like a promise to pay in one contract two sums of money, but it is to do two acts, to wit: convey the land, and convey the personalty. There are, in fact, two trusts declared, one of the lands, the other of the personalty. The subject matter is different, and the mode of conveying different. *The one act does not depend upon the other.* If Walton had chosen to do so, he could have executed this agreement as to one subject matter and not as to the other, and the execution would have been held good, *pro tanto.* The contract here is in all its parts a legal contract. It is legally sustained as to the personalty by the evidence, and not so sustained as to the reality.

Admit, however, that if Walton and Robinson, or their representatives, were litigating their rights under this agreement at Law, the rules of pleading, and the law regulating their rights, would make recovery there impracticable. Yet the rule is not necessarily the same in Equity. We are here in a Court of Equity—a decree may be so rendered as to protect the interests of all parties—a decree may be rendered to execute a contract in part—to enforce it so far as it is sustained by legal evidence, and to abstain from executing it so far as it is not. Besides, it is a third person who is in Chancery asking justice—the *cestui que trust.* Shall she be turned away because she can get only partial justice? Shall she be turned away, because she cannot prove the whole of her case by lawful evidence? The decree in favor of the complainants as to the personalty, does not conflict with the policy of the Statute. That is not directed against parol trusts of

personal, but real estate.    The rights of Robinson's estate cannot
be affected by executing the trust as to the personalty.    From
Robinson, and his representatives, nothing is asked, or could be,
in the nature of the case.    He contracted with Walton for the
benefit of the complainant, and his part of the contract was exe-
cuted when he conveyed the land to Walton.

The case of *Chatter vs. Beckett* (7 *T. R.* 197.) is the strongest
Common Law authority against the view I take of this subject.
It is obvious to remark that, that was a contest at Law between
the original parties, and the contract was entire.    It was a prom-
ise to pay two sums ; one the debt of another, and the other an
original undertaking of the promisor.    It is clear, that in an action
on this promise, the plaintiff must recover the whole or none.
Again, part of that promise was in conflict with the 4th section of
the Statute, which makes contracts to answer for the debt or de-
fault of another *void*, unless in writing, and therein differs from
*the 7th section*, as I have shown.    The same things are true of the
case of *Crawford vs. Morell*, (8 *J. R.* 253,) and of the case of *Loo-
mis vs. Newhall*, (15 *Pick.* 159.)    All distinguishable from this
case.    Indeed, I find no case in the books where an agreement in
part void, because in conflict with the *7th section*, has been de-
clared wholly void.    I do not believe there is any such.    And
there are a number which sustain the judgment I render in this
case.    Thus, in *Doe vs. Pitcher*, (6 *Taunt.* 359,) a deed which con-
tained several limitations, one of which was void, as being to char-
itable uses, in conflict with the Mortmain Act, (9 *Geo. II. c.* 36,)
was held good as to all the other limitations.    So also, where a
deed contained provisions in violation of the Property Tax Acts,
it was held valid as to other provisions contained in it.    See *Red-
shaw vs. Balders*, 4 *Taunt.* 57, 105, 113, 553.    *How vs. Sage*, 15
*East*, 440.

And farther, although a bill of sale for transferring property in
a ship, may be void as such, for want of reciting the certificate of
registry, as required by 26 *Geo. III.* yet the mortgagor may be
sued on his personal covenant in the same instrument, for the re-
payment of the money lent.    8 *East*, 281.    5 *Bing. N. C.* 86.    6
*Scott*, 794, *S. C.*    1 *B. & C.* 327.    2 *D. & R.* 499, *S. C.*    4 *B. &
C.* 120.    6 *D. & R.* 176, *S. C.*

In *Lexington vs. Clarke*, a woman, upon the death of her hus-
band, promised orally to pay rent due upon a lease to her deceas-

Robson *vs.* Harwell and Wife.

ed husband, and also to pay rent subsequently to become due for her own possession ; and it was held, that the agreement was entire, and although void as to one part by the Statute of Frauds, it was nevertheless good as to the other part.    That case is stronger than this, for this contract, I hold, is separable.    (2 *Vent.* 223.)

So where there was a verbal contract to sell a certain farm, and certain dead stock, and growing wheat at separate prices, it was held that the contracts were distinct; and, although the agreement as to the land was void under the Statute of Frauds, because oral, yet the agreement as to the wheat and dead stock, was binding.    3 *B. & C.* 361.    *S. C.* 5 *D. & R.* 228.    Also, 5 *Taunt.* 787.    13 *East*, 87.    11 *Ibid*, 165.    *Story on Contracts, section* 225.

Mr. Smith, commenting upon this doctrine, sums it up with his accustomed perspicuity and precision as follows: " If some of the conditions in a bond, *or promises in a contract*, are illegal, the illegality of those that are bad, does not communicate itself to, or contaminate those which are good—*except*, where from some peculiarity in the contract, *its parts are inseparable or dependent upon one another.*    1 *Smith's Lead. Cases*, 285.    The *general rule* then is, that the illegality of one promise in a contract, does not make void other promises—the *exception* is when the promises are inseparable, or dependent one upon another.    In this case the promises of Walton are not inseparable—*are not dependent*—and this case, therefore, is not within the exception.

LUMPKIN J.

[1.] Being unable to distinguish this case from that of *Miller and others vs. Cotten and others*, (5 *Georgia Rep.* 341,) so far as the *land* is concerned, I concur in the judgment of reversal as to the *real estate.*

It occurs to me, that the similitude between them is perfect in every fact and feature.    In truth, as far as I can perceive, no two cases have been before us since our organization, where the facts bear a more striking resemblance, and the principles of law involved, are more indentically the same.

In *that* case, the bill charged that Ebenezer Duffy, being the owner of a certain tract of land, for certain reasons, (unnecessa-

ry to bc here repeated, but equally as plausible as those charged in this case,) conveyed the land by an absolute deed to his father, Daniel Duffy, upon an agreement, by the father, to enjoy the land during his life, and at his death to convey it, or cause it to be conveyed, to the wife and child of Ebenezer Duffy, the bargainer, and the bill was filed by the widow of Ebenezer Duffy, who had intermarried with Stephen Cotten for the purpose of enforcing the performance of this trust agreement.

In *this* case, the bill charges that Littleberry Robinson, being the owner of a certain tract of land, for certain reasons, conveyed the same, absolutely, to Isaac Walton, upon an agreement, by Walton, to enjoy the land during his life, and at his death to convey it, or cause it to be conveyed, to the child of the bargainer, (Mrs. Harwell,) and the bill is filed by the child, who had intermarried with L. T. P. Harwell for the purpose of enforcing the performance of this trust agreement.

*Mutatis mutandis*—and the decree sought in the one case might be entered on the bill filed in the other.

In *that* case, we say, " After the most patient and careful inquiry, our conclusion is, that the design of this proceeding is the execution of a parol declaration of a trust in the remainder of this land, after the fruition and termination of the life-estate of Daniel Duffy. It addresses itself to the consciences of the defendants, viz : the legal representatives of Daniel and Jesse Duffy, to *discover* the *trust agreement*. It *prays* the *performance* of this agreement. In corroboration of this view, we may refer to the character and capacity in which the complainants come into Court. *It is not as the heirs at law* of Ebenezer Duffy, to whom this land would descend by operation of law, in the event of the deed from Ebenezer Duffy to Daniel Duffy being set aside on the ground of *fraud*. But they apply, as before stated, as *remainder-men in trust*, asking to have the secret trust between the father and the son executed in their behalf. So far from *repudiating the deed* of Daniel Duffy, on account of the fraud in its inception and procurement, they set up this conveyance : they concede, that under and by virtue of it, Daniel Duffy had a good estate for and during the term of his natural life, and they expressly waive calling upon his executors for an account of the rents, issues and profits which accrued previous to his death. They demand that, by a decree in Chancery, the parol trust may be executed."

In *this* case, there can be no doubt that this is a bill for a specific performance of this parol agreement. It was so admitted to be by the learned counsel for the defendant in error ; so that we may say of this case, that "the design of this proceeding is the execution of a trust in the remainder of this land, after the fruition and termination of the life-estate of Isaac R. Walton, the prayer of the bill being that the representative of Walton, may be decreed to convey and deliver to complainants, the said plantation, &c., *such as it was at the death of the said Isaac R.* It addresses itself to the conscience of the defendant, viz : the legal representative of Isaac R. Walton, *to discover the trust agreement.* It *prays the performance* of this agreement. In corroboration of this view in this case, we may refer to the character and capacity in which these complainants come into Court.

It *is not as the heirs at law* of Littleberry Robinson, to whom this land would descend by operation of law, in the event of the deed from Robinson to Walton being set aside, on the ground of *fraud.* But they apply as *remainder-men in trust,* under the parol agreement, asking to have the secret trust between Robinson and Walton executed in their behalf. So far *from repudiating* the deed from Robinson to Walton, on *account of the fraud in its inception, they set up this conveyance :* they concede, that under and by virtue of it, Isaac R. Walton had a good estate for and during the term of his natural life, and waive by their prayer calling his representatives to an account for the rents, issues and profits which accrued previous to his death. They demand that,. by a decree in Chancery, the parol trust may.be executed."

The presiding Judge in the Court below, and the learned counsel for defendant in error, based the decision of the Court below, upon the ground of *fraud,* and this is the only feature distinguishing this case from *Miller et al. vs. Cotten et al.,* sought to be drawn by the latter in the argument before this Court. Let us see if there is any ground for this distinction.

From the bill of exceptions, (not having the transcript of the record,) I find the following synopsis of the bill, approved by the Judge below :

" The bill charged that Martha S. Harwell, formerly Martha S. Robinson, was born in 1804, and at the age of 4 days was adopted by Isaac R. Walton, dec'd, as his child—that about the year 1818, the said Isaac R. being desirous to settle a plantation, was well

pleased with a lot of land belonging to complainant's father, Little-berry Robinson, known as the Black Gum Hill lot—that after re-peated applications to buy the said lot, the said Littleberry Robin-son, finally, about 1st December, 1818, in consideration of an agree-ment and promise by the said Isaac R., that he would put twenty negro slaves upon said lot of land, and add thereto such other lands as might become necessary for said slaves and their increase to cultivate during the lifetime of the said Isaac R., and at his death, (said Isaac R's,) to deliver and convey, or cause to be de-livered and conveyed to the complainant, as aforesaid, the said Black Gum Hill lot, with such other lands as might be added thereto, for the purpose aforesaid, together with said twenty slaves, their increase, and such stock, plantation furniture, uten-sils, &c., as might be upon said place at the death of said Isaac R. he, the said Littleberry Robinson did convey to the said Isaac R., the said Black Gum Hill lot of land, together with a stock of cattle, &c., amounting to $500, upon the said lot of land, the said Isaac R. paying nothing for said land and stock, as they are in-formed and believe.

" The bill farther charged, that in pursuance of said agreement, the said Isaac R., *in good faith*, did put twenty negro slaves upon said plantation, and *did purchase* other lands adjoining said lot, and often during his lifetime told complainants and others, that the said plantation and all that was thereon, would belong to them at his death. The bill farther charged, that said Isaac R. Walton died without conveying, or causing to be conveyed, the said prop-erty as agreed upon."

Such is the bill in this case, and if there is a charge of fraud, or any intimation of a fraudulent intent on the part of Walton, at the *time of procuring the deed*, or at *any other time*, it is more than I have been able to see. In the case referred to, we held that " *the facts upon which relief is prayed, on the ground of fraud, must be plainly, fully and distinctly alleged*," and this decision is there sustained by numerous authorities. I shall here repeat only one paragraph of the decision of the Lord Chancellor in *Irnham vs. Child*, (1 *Bro. C. C.* 93.) " *If the bill afforded a proper allega-tion*, it would be time enough to consider the evidence ; *but cer-tainly there is no fraud stated on the face of the bill. The bill does not go to destroy, but to affirm and reform the contract.* It must be dismissed."

So here, does the bill go *to destroy* the contract? Does it not *affirm it?* and seek by a decree of Chancery, *not only to recover back the land conveyed*, which would be the effect where fraud is charged, *but to compel the representative of Walton to convey land bought by Walton from other persons, and the negroes and other property of Walton, which there is no pretence were ever the property of Robinson?* Is not this *affirming* the contract? If it is not, how happens it that the title of Walton to his negroes and other property became divested out of him and vested in the complainants? This would be giving an effect to *fraud*, more potent and powerful than has been heretofore known, and in addition to *deed, devise*, and all the other conveyances known to the law, the title to land may pass by *fraud!* The bill then seeks to *affirm* the contract. But is there any such principle known to the law, as *affirming* for the one purpose, and *disaffirming* for another?

But if the allegations in the bill made a case of *fraud*, there is another objection fatal to the claims of these complainants. In the case above referred to, we say, " No such case is made in this bill. *The bill should not only have made a proper case, but have been brought by proper parties, viz*: *the heirs at law of Ebenezer Duffy.*" So here, if the bill made a proper case, these are not the proper parties. The heirs at law of Littleberry Robinson, and not the complainants, are entitled to relief.

The distinction, then, sought to be drawn by the defendants in error between this case and the case of *Miller and others vs. Cotten and others*, not only does not exist in fact, but if it did, would be fatal to their cause.

If then the decision of this Court in the case last named, be correct law, so far as the real estate is concerned in this case, the decisions of the Court below, in sustaining this bill and admitting parol evidence for the purpose of proving the trust agreement alleged, were erroneous and must be reversed.

After the decision of this Court in the case referred to, *cordially* sanctioned by the *whole Court*, I had supposed the question settled and closed; but I do not object to its revision. Indeed, I am quite willing that it shall be regarded, hereafter, as the rule of this tribunal, that its judgments are always open to discussion, either from the Bench or the Bar, when supposed to be erroneous; and that our judicial authority shall rest alone upon the reason by which it is supported. Assuming, then, this to be the doc-

trine, at least for the present, I propose to examine the principles upon which the case of *Miller* and *Cotten* rests. For if they are sound, they ought to be sustained.

*First*, I will consider these bills, (for I can draw no distinction between them,) as filed to enforce the specific execution of the alleged parol agreement, without any allegation of fraud; and, *second*, I will examine the effect that such allegations, if made, would have upon the rights of the parties.

That parol evidence is inadmissible to vary, add to or contradict a written contract, is a rule of law so long and so well established, that it would be pedantry to refer to authority in support of it. Upon this rule alone, how can evidence be admissible to curtail and cut down the *fee simple* granted by a deed, and convert it into a life estate? I might here inquire, how far such evidence is admissible to prove a *different* consideration from that expressed in a deed; but waiving this question, the above view is, to my mind, plain, simple and unanswerable. It may be replied, that the object is not to alter or change the deed, but to engraft upon it a trust. Though I might reply, that evidence of this trust, *created at the time of the making of the deed*, would be inadmissible without the Statute of Frauds, upon the principle above alluded to, yet I desire to meet the question, and inquire how far such evidence is admissible under the provisions of the 7th section 29 *Car. II. c.* 3.

[2.] That section provides, " *that all declarations or creations of trusts*, or confidences of any *lands*, tenements or hereditaments, shall be *manifested or proved by writing*, signed by the party who is by law enabled to declare such trust, or by his last will in writing, or else shall be void."

In the face of this provision of the Statute, how can parol evidence be admissible to *prove* that which the Statute requires shall be *proved by writing?* The statement of the proposition is sufficient to refute it; and when I add, that the decision of no respectable Court can be found, (where the Statute has been adopted,) at variance with the position now taken, it seems to me that the argument on this view of the case is exhausted. There are few sections of this celebrated Statute, that have not been more or less frittered away by nice distinctions and encroachments of Courts of Equity, but I think I may safely say none less so than the one under consideration. There are cases of imperfectly ex-

pressed trusts, where Courts of Equity will interfere and compel the party to carry out the trust in good faith. *Rob. on Fr.* 96. Such was the case of *Podmore vs. Gunning,* (7 *Sim.* 644,) cited and relied on by counsel for defendants. Devises have been allowed to be defeated by proof of a secret illegal trust, contrary to the policy of the law. *Mucklestone vs. Brown,* 6 *Ves.* 52. 9 *Ves.* 515. But these are exceptions not within the reason or policy of the Statute. I have examined carefully the authorities relied upon by the defendant in error, and have found none of them contradicting the position here assumed, except the case of *The Lessee of Thomson et ux. vs. White,* (1 *Dallas,* 447.) That case, however, is no authority, as the State of Pennsylvania did not adopt the English Statute of Frauds, but enacted a Statute similar of her own, and in that Statute *has entirely omitted the 7th and 8th sections of the English Statute,* under which the present question arises. *Per Ch. J. Tilghman, in Lessee of German vs. Gabbald,* 3 *Binney,* 304.

There is another exception, and that is where the transaction is infected or tainted with *fraud;* and this brings me to the second and last view of this portion of this cause necessary to be considered.

That Courts of Equity will not permit the Statute of Frauds to be used as a cover for fraud, is a position that no jurist will deny. It shall be my task to show, *first,* that there is no fraud charged in this bill, nor do the circumstances charged amount to a fraud ; and *second,* that if they did, the *complainants* are not entitled to the relief sought.

[3.] I have already extracted and incorporated into this opinion the charges made in this bill, from which it appears that the only complaint is, that Isaac R. Walton *failed* to do what he, in *good faith,* promised and intended to do. Does this failure constitute *fraud ?* In *Miller and others vs. Cotten and others,* we held that it did not, (*p.* 350.) Did we hold right ? Can that be *dolus malus* which was done, and *charged to have been done bona fide ?* For we must recollect that the *fraud* must be in the *original* transaction—in the procuring of the deed. The *failure to perform* is mere evidence, say the defendants in error, of the original intent. Says Judge *Merriwether,* in the charge excepted to, " It is not necessary to prove that the fraudulent intent of Walton existed, *eo instanti* with the making of the agreement. If such an intent

arose afterwards, and in pursuance of that intent to defraud Mrs. Harwell, Walton failed to do what he had contracted to do, the law *will evidence his intent by his acts,* and connecting his failure to convey with the original agreement to convey, *will presume the existence of that fraudulent intent on the part of Walton at the time of the conveyance by Robinson."*

Without inquiring into the correctness of this ingenious exposition of the law at this time, how could it apply to a bill which charges, in terms, *good faith* on the part of Walton? That he never denied the trust to the hour of his death, but in *good faith* went on to execute it! A bill filed evidently under the idea that the part performance of the trust would take it out of the provisions of the Statute. But to return. Did the failure to convey constitute *fraud ? Fraud,* under the Civil Law, is defined to be " any cunning, deception or artifice used to circumvent, cheat or deceive another." And this definition Judge *Story* adopts as sufficiently descriptive of *actual fraud. Story's Eq. Jur.* §§186, 187. 4 *Peters,* 297. *Constructive frauds* are such as " by their tendency to deceive or mislead other persons, or to violate private or public confidence, or to impair or injure the public interests, are deemed equally reprehensible with positive frauds." §258. "But if there has been no fraud, and no agreement to reduce the settlement to writing, but the other party has placed reliance solely upon the honor, word or promise of the husband, no relief will be granted, for in such a case the party chooses to rest upon a parol agreement and must take the consequences." 2 *Story's Eq. Jur.* §768. So says Lord *Hardwick,* in *Whitton vs. Russell,* (1 *Atk.* 448,) " Every breach of promise is not to be called a fraud." So in the case of *Moss vs. Riddle,* (5 *Cr.* 351,) the plea of the defendant stated a promise on the part of the plaintiff which he had *failed to comply with,* by which the defendant alleged the writing sued on became void. This plea, it was insisted, contained sufficient allegations of fraud; but Ch. J. *Marshall* said, " There is no allegation of fraud, and the circumstances pleaded do not, in themselves, amount to fraud. *Fraud consists in intention, and that intention is a fact which ought to be averred."* So in *Governeur vs. Elmendorf,* (5 *John. Ch. R.* 82,) counsel for defendants insisted that, from the facts stated in the answer, a case of fraud was made out. But Ch. *Kent* says, " I do not understand that any such charge exists in the answer or was intended by it, as a substantial ground of defence,

though such a charge is now put forward by the defendants' counsel as one of their points.　But it is requisite that the *charge of fraud should be made a distinct ground of allegation by the party in pleading*, otherwise it *is not to be deemed in issue*, and cannot affect the contract in question."　See, also, the remarks of the same learned Chancellor, in *James vs. McKernon*, 6 *Johns*. 564.　See, also, *Roberts on Frauds*, 79.　3 *Rand*. 507, *and cases there cited*. 4 *Munf*. 273.　6 *Har. & John*. 435, 445.　4 *Ga. Rep*. 519.　12 *Peters*, 196.

I am tempted, at the expense of being tedious, to insert here the cases referred to in *Miller vs. Cotten* upon this point, and more especially the case of *Irnham vs. Child*, (2 *Bro. Ch. C.* 93,) but I forbear, conceiving that the point is amply sustained by the authorities quoted and referred to.

Counsel for the defendant commented at some length upon the case of *Kennedy's Heirs and Executors vs. Kennedy's Heirs*, (2 *Ala. N. S.* 571,) as being an authority in point, to show that the charges in this bill were sufficient to amount to a charge of fraud. That was an application, by the children and sole heirs of William E. Kennedy, to set aside a deed made by their father to Joshua Kennedy.　William E. Kennedy was a free drinker, gradually becoming more intemperate and subject to intoxication, and when intoxicated, or partially so, would make conveyances of his real estate to any one who would ask him.　He lived in the house with Joshua Kennedy, his brother, who *acted as his agent*, and in whom he placed great confidence, and at his urgent solicitation, and that of other friends, William made the deed sought to be set aside, upon the assurance of Joshua, that he would hold it in trust for the benefit of complainants.　Previous to Joshua's death, he denied the trust, and set up title in himself. The Court held that these allegations amounted to a charge of fraud, and it is not necessary for me to attack the correctness of the decision; on the contrary, I think the confidential fiduciary relationship of the parties, of itself, would require a Court of Equity to look with suspicion upon such a transaction.

The rule I am contending for is not only the rule of the books, but it is the dictate of sound reason.　Let the doctrine be once established, that a failure to comply with a parol promise made cotemporaneous with a deed, is *ipso facto*, a fraud and can be proved, and the promise decreed to be performed in Equity, on

the ground of fraud, and you do what the Master of Rolls, in *Portmore vs. Morris,* refused to do—*demolish one of the foremost rules of law.* You have but to allege a *failure* to comply with any *parol* stipulation, and Equity must relieve on the score of fraud. If this bill had charged that the parol agreement now set up was intended to be inserted—would have been inserted in the written contract, but for the fraudulent promise on the part of Walton to execute it any how; or that it was intended to be so inserted, but by fraud of Walton was withholden; or that a different paper was executed than was intended, and thus was effected by any "contrivance or design," on the part of Walton, then there might be some pretence that the allegations made a case of fraud; but when the bill charges, that the parol agreement never was intended to be inserted in the written contract; that reliance was placed solely upon the word of Walton, and that it was not misplaced, for he, in *good faith,* proceeded to do as he promised, and acknowledged the trust to the day of his death, and by accident or neglect, not culpable, died without consummating his promise, I must adhere to my opinion that it makes no case of fraud.

2d. But if it did, would these complainants be entitled to the relief sought? I think not. *First,* because they are not the proper parties; and *second,* because, in cases of fraud, the relief sought can extend only to the property so fraudulently obtained.

[4.] The effect of fraud is to vitiate the contract and restore the parties to their original position. Where deeds had been fraudulently obtained, the remedy in a Court of Law was inadequate, and recourse was had to Chancery to rescind the contract and order the deed to be delivered up to be cancelled, or order a reconveyance; and this is the universal relief afforded in Equity in cases of fraudulent conveyances of lands. In *Pickett vs. Loggon,* (14 *Ves.* 234,) Lord *Eldon* says, "It has long been settled, that if a conveyance has been obtained by means which, in this Court, have the character of fraud, imposition, &c. the person deriving title under it is a trustee, and the species of relief is by directing a reconveyance." Again, in *Winch vs. Winchester,* (1 *Ves. & Bea.* 378,) the same learned Chancellor says, "As to the admissibility of the evidence, it must depend upon the purpose for which it is produced. If the defendant insists that the evidence be received, *he will be entitled to have the contract performed,* with an

abatement of the price. I think it is not admissible for that purpose, *as the Court cannot execute in his favor a written agreement with a variation introduced by parol evidence;* but if he offers the evidence for the purpose of *getting rid* of. such contract altogether, for that purpose, I think it may be received." And so says Judge *Story*—" A fraudulent purchaser will be held as a trustee for the honest but deluded and cheated vendor." 2 *Eq. Jur.* §1265. In *Whelan vs. Whelan,* (3 *Cow.* 580,) the question was directly made, whether the fraudulent grantee could be decreed to hold as trustee according to the parol agreement, or whether the conveyance should be decreed fraudulent and void, as was there prayed. *Woodworth,* J. says, " The farm in St. Lawrence County, on the face of the agreement, was conveyed, unconditionally, to William. He admits in his answer, that he agreed to convey it to Charles. There was no declaration or evidence of the trust *in writing* and the deed is absolute. *This case cannot be taken out of the Statute of Frauds. It follows then, that Charles could not compel execution of this trust.* Decree, that the deed be annulled and held for naught." *Suydam,* Senator, concurring, says, " There being no *written* declaration of trust, I can see no reason why we should not adjudge a reconveyance. On a bill *filed by Charles, or his children, William might set up the Statute of Frauds and defeat a conveyance,"* p. 587. So in the case in 2 *Ala. Rep.* above referred to, the decree was a reconveyance of the land.

These cases might be multiplied to any conceivable extent, but it is unnecessary. I need only add, that I have not been able to find a case where a Court of Equity has ever held the fraudulent grantee of land trustee for any person save the grantor and his heirs; and that no such case exists, I may safely infer from the fact, that the able and indefatigable counsel for defendants in error produced none on the argument. The only case which seems to look that way, was the case of *Sellack vs. Harris,* reported in 5 *Vin. Abr.* 521, and referred to in 2 *Story's Eq. Jur.* §768. In this case the father had purchased lands in fee with the money of his second son, and intended to devise them to him ; but the eldest son promised that he should enjoy them accordingly. The eldest son refused to comply after the death of the father, and it was decreed that he should. Not having this work, I do not know the reasons on which this decision went. I learn from 3 *Woodes' Laws of Eng. p.* 438, that Lord Keeper *Wright* and the

Master of the Rolls held the eldest son entitled and refused relief; but Lord Chancellor *Cowper* was of another opinion. The case does not conflict with the position I have laid down, for several reasons. *First*, the purchase being made with the money of the second son, there was a *resulting trust* in his favor, and the eldest son, therefore, held as trustee for him ; and *second*, as there was no conveyance obtained, a reconveyance could not be decreed, for the fraud being perpetrated on the father, a conveyance to his estate by the heir would be a conveyance to himself. The relief granted was the only relief that in the case could be given.

I know there is a class of cases to be found in the books, where a person intending, most frequently by will, to confer a benefit upon a third person, has been hindered from so doing by the fraud of another, that such last person has been decreed to make good the injury thus inflicted; as where executors, residuary legatees or heirs have hindered the testator from bequeathing annuities or legacies, upon promises to pay them any how, such persons, after the death of the testator, have been forced by Equity to make good their promises; but upon examination, all such cases will be found to involve the right to personalty only. It is true, that in some of the cases legacies have been charged upon lands, because the testator was estopped from making such charge by the fraudulent promise of the heir. The reason of these cases is, that the descent to the heir was by the consent of the testator, he failing to make the payment of the legacy a charge on the land. Such consent was obtained by fraud. The testator being dead, Equity cannot restore the parties as they were. The relief then granted by a Court of Equity, is to take away from the heir the benefit of this consent thus fraudulently obtained.

I think I may safely say, no precedent can be found where the fraudulent grantee in a deed to land has been held as a trustee for any one, save the grantor and his heirs. For them he certainly is trustee. It would be very curious that he is at one and the same time trustee for the deceived grantor, and trustee also for the person for whose benefit the promise was made. To illustrate: Walton here, according to this position, is liable as trustee for the grantor, Littleberry Robinson, or his heirs, and at the same time is liable to precisely the same extent as trustee for Mrs. Harwell. Would a judgment in favor of the grantor protect him against the claims of Mrs. Harwell, or will this decree protect him

against the heirs of Robinson ? If so, which is entitled ? The one that sues first?

These complainants are not the proper parties. No benefit to them is alleged to have been hindered or prevented by the fraudulent promise of Walton ; and were it necessary, it might be a grave question whether or not they are not mere volunteers, in any view, in whose favor Equity never decrees a specific performance.

[5.] But if they were the proper parties, and if the bill made a proper case of fraud, they could not have the relief prayed, because they seek, under this bill, to have decreed to them, not only the land so fraudulently obtained, but also all the land purchased by Walton adjoining the same, and negroes and stock to the value of $10,000 besides ! Such an effect to a fraudulent purchase of lands is, I confess, new to me, and a precedent for it cannot, I apprehend, be found in the books. Indeed, this mode of *conveying title by fraud,* is rather a new head of legal science. A fraudulent grantee might be decreed to account for the rents, issues and profits. He ought to be forced to reinstate the party deceived to all the rights he enjoyed before the fraud was committed, and as if the fraud never had been committed ; but the proposed plan of amalgamating the *contract* and the *fraud,* and where the *contract* fails on account of the Statute, to have recourse to the *fraud,* and where the *fraud* is insufficient for the purpose, to fall back on the *contract,* is, to my mind, an anomalous proceeding. As I before remarked, this bill seems to have been filed upon the idea that a part performance of the *trust* might be gathered from the facts alleged. No such position was assumed in the argument in this Court, nor does the Judge below base his decision on any such idea. Nor would it avail the defendants in error if such position had been taken, for the *acts* done by Walton were none other than every purchaser does upon buying land. He took possession, placed his own negroes upon it, and retained possession until his death. These acts are indicative of *no trust* ; nor is there any other *fact* alleged from which a Court of Equity could presume the part performance *of a trust.*

And it may be well to remark in all cases, that " in order to make the acts such as a Court of Equity will deem part performance of an agreement within the Statute, it is *essential that they*

*should clearly appear to be done solely with a view to the agreement being performed."*   2 *Story's Eq. Jur.* §762.

I will only add, that the same acts charged in this case, existed in the case of *Miller et al. vs. Cotten et al.* and were there considered as insufficient to take that case out of the Statute. There Daniel Duffy went in possession under the deed, and retained possession till his death. Here, Walton did precisely the same acts. I see no reason for changing my opinion as to the effects of them.

I have thus, at some length, investigated the principles on which my view of this case, as well as our decision in *Miller and others vs. Cotten and others*, are founded, and a farther examination of the authorities but strengthens my conviction of the correctness of that decision.

It remains to add but a few words in reference to the personalty included in this bill. If the ground of relief here is *fraud* in Walton, I think I have already shown that such fraud can give no right to recover any thing but the land so fraudulently obtained, and that being the basis on which the Court below founded its decision, I might dismiss this part of the case without farther remarks.

[6.] But viewed as a bill to enforce the performance of this alleged contract, the complainants, it would seem, are remediless, because a contract made both for the sale of *real and personal* property, which is *entire*, founded upon one and the same consideration, and is not reduced to writing, is *void*, as well in respect to the *personalty* as the *realty;* no principle of law being better settled than that an *entire contract void in part is void in toto.* *Thayer vs. Rock*, 13 *Wend. Rep.* 53. *Crawford vs. Morrell*, 8 *John.* 253. *Van Alstine vs. Wimple*, 5 *Cow.* 162. 7 *Term*, 201. 2 *Vent.* 223.

But I forbear to discuss this branch of the case, or to examine how far this doctrine is applicable to the facts and circumstances embraced in this bill.

———

WARNER, J.

[1.] The object of the complainants' bill is to obtain the *specific execution* of an agreement made between Littleberry Robinson

and Isaac R. Walton, the defendant's intestate, for the benefit of Mrs. Harwell, one of the complainants, who is the daughter of Robinson. Littleberry Robinson, the father of one of the complainants, being under a natural and moral obligation to make a suitable provision for his daughter, entered into the following parol agreement with Isaac R. Walton, in his lifetime :—Robinson, on his part, contracted and agreed to convey to the said Walton, a certain tract of land in the County of Morgan, known as the Black Gum Hill lot, of the value of four thousand dollars, together with the stock of cattle, sheep and hogs upon the place, of the value of five hundred dollars. The said Walton, on his part, contracted and agreed, in *consideration* of said conveyance of land and stock to him by said Robinson, that he would place twenty negro slaves upon said lot of land, and add thereto such other lands as might become necessary for the said slaves and their increase to cultivate during the lifetime of said Walton, and at his death would deliver and convey, or cause to be delivered and conveyed to the complainant, (Mrs. Harwell,) the said Black Gum Hill lot of land, with such other land as might be added thereto, for the purpose aforesaid, together with the said twenty slaves and their increase, and such stock, plantation tools and furniture as might be upon said place at the death of said Walton.

The complainants charge in their bill, that Robinson *executed* his part of the agreement, by making the conveyance of the land and stock to Walton, the latter paying him nothing therefor ; nor was he bound, by said agreement, to pay any other *consideration* than that set forth in said agreement for the land and stock so conveyed ; and that the said Walton, in *pursuance of said agreement*, did put twenty negro slaves upon said plantation, and went *into possession of the same*, and did purchase other lands adjoining the said Black Gum Hill lot, as the increase of said slaves made it necessary, so that said settlement of land, at the death of Walton, comprised five hundred acres ; that Walton, in his lifetime, often told the complainants and other persons, that said plantation and all that was on it would, at his death, by virtue of his said agreement with said Robinson, be the property of complainants. The complainants also allege, that said Walton departed this life in the month of January, 1845, without making the conveyance as stipulated by said agreement, or giving any directions as to the delivery and conveyance of said property to the com-

plainants.   The defendant in his answer, denies the agreement, and insists on the Statute of Frauds in bar of the complainants' right to a decree.   On the trial of this cause in the Court below, exceptions were taken to the decision of the Court, in overruling the motion to dismiss the complainants' bill for want of equity, to the admission of parol evidence offered to prove the agreement, and to the charge of the Court to the Jury ; but all the objections are properly reducible to one, and that is, the failure of the complainants to make.such a case by their bill, and the evidence in support of it, as will authorize a Court of Equity to grant them the relief for which they pray.

As we are not unanimous in our opinions in this case, I shall proceed to express my separate reasons for the judgment which I feel bound to render in favor of the complainants.

The main ground of objection to the complainants' recovery, as urged by the counsel for the defendant, is the Statute of Frauds.   Their position is, that the agreement to convey land is void by that Statute, and the agreement being void as to the land, is also void as to the personalty ; that an agreement void in part is void as to the whole.   As I am for affirming the judgment of the Court below as to the entire agreement, including the land as well as the personal property, I shall not discuss the question whether an agreement void in part is void as to the whole, but shall leave the discussion of that branch of the case entirely to my brethren.

By the 4th section of the Statute of Frauds, it is declared, " No action shall be brought upon any contract or sale of lands, tenements or hereditaments, or any interest in or concerning them, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorised."   *Prince*, 915.

In a Court of Law, I concede the complainants could not enforce a *specific* execution of this agreement, although based upon a sufficient consideration, nor in a Court of Equity, unless there had been a *part performance* of it.

Whenever there has been a *part performance* of a parol agreement for the conveyance of land, *a part execution of the substance* of the agreement, acts done and performed, unequivocally referring to, and resulting from the agreement, and such that the party

in whose favor the agreement was made, would suffer an *injury* amounting to *fraud*, by the *refusal* of the other party to execute it, a Court of Equity will, in such cases, decree a specific performance of the agreement. 1 *Maddock's Chan.* 378. *Fonblanque's Eq. top page*, 157, 3*d Amer. Ed.* 2 *Story's Eq.* 62, §759. *Clerk vs. Wright,* 1 *Atkyns' Rep.* 12. *Walker vs. Walker,* 2 *Atkyns' Rep.* 100. *Gregory vs. Mitchell,* 18 *Vesey,* 328.

The principle by which Courts of Equity are governed in decreeing a specific execution of parol contracts, within the Statute of Frauds, when there has been a part performance, is, that inasmuch as the Statute was enacted to *prevent fraud*, a party will not be permitted to take shelter under the Statute and *perpetrate fraud;* or, as Mr. Justice *Story* states the principle, " Where one party has *executed* his part of the agreement, in the confidence that the other party would do the same, it is obvious that if the latter should refuse, it would be a *fraud* upon the former to suffer this refusal to work to his prejudice." *Story's Eq.* 64. The rule, as stated by Mr. *Fonblanque,* is equally explicit and satisfactory—" If the agreement be carried into *execution* by one of the parties, as by delivering *possession,* and such execution be accepted by the other, *he that accepts it* must perform his part; for where there is a performance, the evidence of the bargain does not lie merely upon the *words,* but upon the *fact performed,* and it is *unconscionable* that the party that has received the *advantage* should be admitted to say, that such contract was never made." *Fonblanque's Eq.* 157.

In *Buckmaster vs. Harrop,* (7 *Vesey,* 346,) Lord *Eldon* states the ground of the interference of the Court to decree a specific performance of agreements within the Statute, to be *fraud in refusing to perform the agreement after performance by the other party.* *Niven vs. Belknap,* 2 *John. R.* 587. *Massey vs. McIlvrain,* 2 *Hill's Ch. Rep.* 425.

I have endeavored to establish the principle on which Courts of Equity proceed to decree a specific execution of agreements within the Statute of Frauds.

[2.] The next question to be considered is, whether the complainants have made such a case by their bill, as to bring it within that principle ; or in other words, have the complainants, by their bill laid, the *foundation* for the introduction of the parol evidence, which was admitted on the trial by the Court below ? The com-

plainants have alleged the agreement made by the contracting parties, and the *consideration* for that agreement; that the agreement was *certainly executed* on the part of Robinson, by conveying to Walton the Black Gum Hill lot of land, and the stock thereon, of the value of forty-five hundred dollars, and the acceptance thereof by Walton, who went into *possession* of the same, and cultivated it until his death, without paying any other consideration therefor, than his agreement to convey the property at his death to the daughter of Robinson, and the adopted daughter of the defendant's intestate; that Walton, the defendant's intestate, placed twenty negro slaves on the land so conveyed by Robinson, *in pursuance of the agreement*, and did purchase other lands adjoining the Black Gum Hill lot, as the increase of said slaves made it necessary, and departed this life in January, 1845, without making any conveyance of the property to the complainant, Mrs. Harwell, as by the terms of the agreement on his part, he was bound to have done. So it will be perceived, that the agreement was not only *wholly executed* on the part of Robinson for the benefit of his daughter, but was so far executed by Walton, as to *place twenty negro slaves upon the land, in pursuance of the agreement, who went into the possession of the land and stock*, cultivated, used, and enjoyed the same during his lifetime, without paying any other consideration, than his agreement to convey the property to the daughter of Robinson, for whose benefit the contract was made, but which conveyance he never executed on his part, as in Equity and good faith, by the terms of his contract with Robinson, he ought to have done. Such refusal and failure to execute the agreement on the part of Walton, when it had been *executed* on the part of Robinson, in the confidence that he would act in good faith on his part towards his daughter, and having enjoyed the benefit of that agreement for a number of years, is a *fraud* upon the rights of Mrs. Harwell; and such a fraud too, as a Court of Equity will not permit to be sheltered and protected under a Statute enacted to *prevent fraud*. It is not necessary to allege the commission of a fraud *in totidem verbis*. If the bill states, with distinctness and precision, facts and circumstances which in themselves amount to fraud, it is sufficient. *Kennedy vs. Kennedy*, 2 *Ala. Rep.* 604.

I place my judgment expressly upon the ground, that there was such a *part execution* of this agreement on the part of the contracting parties, according to the case made by the complainants'

bill, that the *refusal* and *failure* of Walton, to execute his part of the agreement, by making a conveyance of the property, according to the terms of that agreement, is, according to the well settled principles by which Courts of Equity view such transactions, a, *gross fraud* upon the rights of Mrs. Harwell, for whose benefit the agreement was made; and, therefore, the parol evidence was properly admitted by the Court below.

The verdict of the Jury establishes the agreement, and the acts of part performance, as charged in the complainant's bill, and the evidence, in my judgment, was amply sufficient for that purpose.

The testimony of John B. Walker, one of the several witnesses examined for the complainants, is very strong in support of the agreement, not only as to the declarations of Walton, but to his *acts.* In 1840, the witness drew a will for Isaac R. Walton, who gave the Black Gum Hill plantation, negroes, and every thing appertaining to it, horses, mules, stock, &c. to Mrs. Harwell, one of the complainants. When it was written and read to him, he said, " he had now done what he had promised Littleberry Robinson in his lifetime, to do." The plantation was kept separate from his other plantations. Witness kept the will, and afterwards gave it back to Walton, who told him he intended to destroy it, and it was destroyed in 1842—said one of his reasons for destroying the will was, that Doctor Harwell did not please him, and he . wished to change that clause.

Taking the whole of the testimony contained in the record, and in my judgment, there will be found but few cases in which parol agreements have been established by more convincing and irrefragable evidence. The counsel for the defendants have insisted, with some degree of zeal, that the principles settled by this Court, in the case of *Miller vs. Cotten,* (5 *Ga. Rep.* 341,) must control this case. I have not been able myself to perceive the analogy insisted on in the argument. In the judgment rendered in *Miller vs. Cotten* I concurred, and it now meets with my entire approbation. If I understand the questions involved in the judgment of the Court, in that case, it does not now stand in my way. In that case, the complainants claimed to be entitled as *remainder-men in trust,* under a deed made by Ebenezer Duffy to Daniel Duffy, which deed on its face, purported to have been made for a valuable consideration paid by the grantee to the grantor. The complainants claimed under this deed, and relied on it as part of their

title. They offered parol evidence, to *contradict the face of the deed*, under which they claimed title, and to engraft a *trust* in their favor upon that deed by parol evidence, without alleging any *fraud* in the execution of the deed. The 7th section of the Statute of Frauds declares that, "All declarations, or creations of trusts or confidences of any lands, tenements, or hereditaments, shall be manifested and proved by some writing signed by the party, who is by law enabled to declare such trust, or by his last will in writing, or else they shall be utterly void and of none effect." *Prince*, 915. The parol evidence offered to contradict the face of the deed under which the complainants claimed title, and to *engraft a trust* in their favor as remainder-men *upon the deed*, was rejected by the Court in *Miller vs. Cotten*, there being no allegation that the deed was written different from what the parties intended, or any *fraud* whatever in its execution. In this case, the complainants do not seek to *engraft any trust*, in their favor, *upon the deed* from Robinson to Walton. The complainant's title to relief is based upon the *agreement* alone, and not upon the deed from Robinson to Walton; that deed was executed just as it was intended to have been executed by the parties to it, and constituted the *consideration* for the agreement, which the complainants now seek to have specifically executed in their favor. The complainants allege the agreement between the parties under which they claim to be entitled to equitable relief, and also allege the conveyance of the land and stock by Robinson to Walton, as the *consideration* for the agreement paid by Robinson to Walton, as *part performance* of the agreement. It was part of the agreement between the contracting parties, that Robinson should convey the land and stock to Walton, *not in trust* for the benefit of Mrs. Harwell, but as a *consideration for the agreement*, by which Walton bound himself to place twenty negro slaves upon the land, and purchase other lands, as the increase of the slaves should render it necessary; and at his death to convey the *whole*—the Black Gum Hill lot—the twenty negroes and their increase—the stock, and the land afterwards to be purchased, as the increase of the slaves should render it necessary, to Mrs. Harwell.

The only object for alleging a conveyance of the land and stock to Walton by Robinson, was, to show the *payment of the consideration* of the agreement by Robinson, and that Walton had enjoyed the *full benefit of the contract* on his part, and then *fraudu-*

*lently* refused to execute his part of the agreement, which fraudulent refusal operated as an *injury* to the rights of Mrs. Harwell, for whose benefit the agreement was made.

In the consideration of a Court of Equity, the *refusal* of Walton to fully execute his part of the agreement, by making a conveyance of the property, amounts to *fraud*, and constitutes in this case, the *gravamen* of the complainants' bill.

In *Miller vs. Cotten*, the parol evidence was offered to engraft a *naked parol trust* upon a deed for land, under which the complainants claimed title, without having laid *any foundation*, whatever, for the introduction of such evidence, by the allegation of any fact in their bill, from which a Court of Equity could even *presume fraud*, so as to take the case out of the 7th section of the Statute of Frauds. In this case the complainants seek to obtain the specific execution of an agreement for the *conveyance* of land, within the 4th section of the Statute of Frauds, not to engraft a mere *naked parol trust upon a deed*, absolute upon its face, within the 7th section of the Statute.

In *Miller vs. Cotten*, there was *no foundation* laid in their bill for the introduction of parol evidence. In this case the complainants have laid the *foundation* for the introduction of parol evidence, to take the case out of the Statute, by alleging such a *part execution* of the agreement, by one of the contracting parties, and *acceptance* by the other, that to permit one of the parties to recede from the agreement, would, in view of a Court of Equity, operate as an *injury* to the complainants, for whose benefit the agreement was made, amounting to fraud; and that, in my judgment, constitutes a clear and marked distinction between this case and *Miller vs. Cotten.* The object of the agreement was to make provision for Mrs. Harwell, who was the daughter of one of the contracting parties, and the adopted daughter of the other. The complainants are not *mere volunteers.* 2 *Story's Eq.* 103, §793. *Minturn vs. Seymour*, 4 *John. Ch. Rep.* 500. *Ellis vs. Nimmo*, 10 *Eng. Ch. Rep.* 534.

The agreement was executed on the part of Robinson, in the *confidence* that it would be executed by Walton, for the purpose of making a suitable provision for his daughter, and his refusal to execute his part of the agreement is *injurious* to, and a *fraud* upon, the rights of that daughter, now one of the complainants. " Fraud, (says Mr. Justice *Story*,) in the sense of a Court of E~~~

ty, properly includes all acts, omissions and concealments which involve a breach of legal or *equitable duty,* trust or *confidence* justly reposed, and are *injurious to another,* or by which an undue and *unconscientious advantage* is taken of another; and Courts of Equity will not only interfere in cases of *frauds* to set aside acts done, but they will, also, if acts have, by *fraud, been prevented from being done by the parties,* interfere and treat the case exactly as *if the acts had been done.*" 1 *Story's Eq.* 197, §187. *Kennedy vs. Kennedy,* 2 *Ala. Rep.* 571.

[3.] In a Court of Equity, all agreements are considered as performed, which are made for a valuable consideration, in favor of persons entitled to insist upon their performance; they are to be considered as done at the time when, according to the tenor thereof, they ought to have been performed; they are also deemed to have the same consequences attached to them, so that one party, or his privies, shall not derive benefit from his *laches* or *neglect;* and the other party, for whose *profit* the contract was designed, or his privies, *shall not suffer thereby.* 1 *Story's Eq.* 79, §61. Having taken this agreement out of the Statute, a Court of Equity will execute it according to the *intention* of the contracting parties, for it is a rule in Equity, that what is *covenanted* to be done for valuable consideration, is considered as *actually done. Bash vs. Dalnay,* 3 *Atkyns' Rep.* 534, *Crabtree vs. Bramble, Ib.* 687. In *Massey vs. McIlvain,* (2 *Hill's Ch. Rep.* 428,) it was held, that a *parol* agreement to convey land, set up by the Court, has equal validity with a deed containing a covenant to convey. In *Greenaway vs. Adams,* (12 *Vesey,* 401,) the Master of the Rolls said, " The *party injured* by the non-performance of a contract, has the choice to resort either to a Court of Law for damages, or to a Court of Equity for a *specific performance.*" The complainants in this case have resorted to a Court of Equity for the specific performance of the agreement made for *their benefit,* and for the reasons already stated, I am of the opinion they are entitled to have it executed according to the *intention* of the contracting parties.

[4.] The decree rendered for the complainants, is for the sum of twelve thousand and ten dollars, and twenty-seven cents by way of damages; the defendant by a sale of the property mentioned in the agreement, having put it out of his power *specifically* to perform the agreement. In such a case it is competent for a

Robson *vs.* Harwell and Wife.

Court of Equity to decree compensation by way of damages. *Phillips vs. Thompson,* 1 *John. Ch. Rep.* 150.     *Greenaway vs. Adams,* 12 *Vesey's Rep.* 400.

In every view in which I have been enabled to consider this case, I have an abiding confidence that, according to the fundamental principles by which Courts of Equity are governed in dispensing justice, the judgment of the Court below, decreeing a specific execution of the *entire* agreement, should be affirmed.